IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) |
| | ) |
| TALLYGENICOM, L.P., et al., | ) Bankr. No. 09-10266 (CSS) |
| | ) (Jointly administered) |
| Debtors. | ) |
| | |
| MICHAEL PLUTA, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) Civ. No. 09-175-SLR |
| | ) |
| TALLYGENICOM L.P., | ) |
| | ) |
| Appellee. | ) |

**MEMORANDUM ORDER**

At Wilmington this 20th day of March, 2009, having heard the parties on appellant's emergency motion for stay pending appeal; and having reviewed the transcript of the evidentiary hearing afforded appellant in the bankruptcy court, which record informed the bankruptcy court in its decision to allow the sale of debtors' assets to proceed if the purchaser provides adequate protection of the appellant's purported ownership interest in certain intellectual property;

IT IS ORDERED that appellant's emergency motion to stay (D.I. 1) is denied, for the reasons that follow:

1. **Standard of review.** In determining whether to issue a stay pending appeal,

the court must consider whether the movant will suffer irreparable injury absent a stay, whether other parties will suffer substantial injury if a stay is issued, whether the movant has demonstrated a substantial possibility of success on appeal, and the public interests. *Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 658 (3d Cir. 1991). "A court may deny a motion for stay if the movant fails to make a showing on any of the above factors." *In re Genesis Health Ventures, Inc.*, 367 B.R. 516, 519 (Bankr. D. Del. 2007).

2. **Procedural background.** On January 27, 2009, debtors TallyGenicom, L.P., TallyGenicom Holdings, LLC and Printing Solutions, Inc. commenced their chapter 11 bankruptcy cases. The debtors are operating their respective businesses as debtors-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108. On the petition date, the debtors filed a motion seeking approval of a proposed sale of substantially all of the assets of debtor TallyGenicom, L.P. ("seller") to Printronix, Inc. ("purchaser"). The motion proposed sale procedures, including deadlines for bids, objections, and a hearing. The motion was granted by order dated February 20, 2009, with the sale objection deadline scheduled for February 25, 2009 and the hearing scheduled for March 4, 2009.

3. As of the bid deadline, February 26, 2009, the debtors had received no bids for the assets other than the qualified bid of Printonix and no parties had requested extensions of any of the other deadlines. On the morning of March 4, 2009, after the February 25th objection deadline, appellant filed a "limited" objection to the entry of an order approving the proposed sale. The sale hearing was continued to March 10, 2009.

On the morning of March 10, appellant filed a "supplemental" objection. On March 13,[1] the bankruptcy court heard live testimony from four witnesses, among them the "global CFO" of TallyGenicom and a member of the board of directors of TallyGenicom Germany.

    3. **Factual background.** Prior to 2003, the Tally Group was a worldwide printer manufacturer, distributor and service provider, with sales and service subsidiaries in several countries around the world, including the United States. Tally AG was the parent holding company headquartered in Germany; Tally GmbH was the German operating company and a 100% owned subsidiary of Tally AG. By a transaction concluded in August 2003, Genicom, a United States company, acquired Tally AG. As of the time of the transaction, the intellectual property ("IP") of Tally AG resided in Tally GmbH ("the German IP"[2]); there was no value ascribed to these assets on the GmbH's books. The books and records of the new company, TallyGenicom, allocated approximately $2.7 million of the purchase price to the worldwide IP of the Tally Group.

    4. In December 2004, the German IP was transferred from Tally GmbH to Tally AG. In order to comply with German law and the requirement that the transaction be at

---

[1] I note at this juncture that, the day following the hearing before me, the parties provided audio recordings on computer discs of the multiple day evidentiary hearing held before the bankruptcy court, because a transcript had not yet been prepared. Unfortunately, the format of these discs were not compatible with the district court's computer software and it took another day or so for reformatting. By that time, the parties submitted a written transcript of the one day during which evidence relevant to the issue at bar was taken. There is no date on the transcript. I had been informed that March 13 was the day to focus on, vis a vis the audio recordings.

[2] The IP at issue was described in testimony as trademarks, Tally EU1229012, CN1258940, and CN1234473.

arm's-length, a value of 100,000 euros was ascribed to the German IP. The price, however, was subject to review and adjustment upon further study. In August 2005, the German IP was transferred from Tally AG[3] to TallyGenicom LLC.[4] A fair market value of $1.5 million (1.1 million euros) was ascribed to these assets, based on an evaluation of current business data. The purchase price consideration was given in the form of relieving the amount of debt owed by Tally AG to TallyGenicom LLC. Based on the $1.5 million valuation, the December 4, 2004 transaction was amended to increase the purchase price between Tally GmbH and Tally AG; the increase in price was paid by Tally AG's assuming certain liabilities of Tally GmbH.

5. In January 2009, an amendment to the agreement of sale between Tally GmbH and Tally AG for the German IP was circulated by TallyGenicom LLC. According to debtors, an incorrect schedule had been appended to the agreement that did not include the IP at issue; the amendment corrected that problem. The corporate representatives of Tally AG did not execute the amendment. Tally AG remained the registered owner of the German IP, at least until January 2009.

6. Tally AG continues to do business in Europe. It continues to use "the Tally name" on its products. No agreements were produced of licenses running between the United States and European corporate entities with respect to the IP at issue.

7. **Analysis.** The bankruptcy court concluded that there was a good faith dispute about the ownership of the German IP, i.e., whether debtors had the legal right

---

[3]Also referred to as "TallyGenicom AG."

[4]The purpose of the transfer was to consolidate the global IP in one entity for management purposes.

to transfer the German IP in the proposed sale of assets in the above captioned bankruptcy proceedings. In order to accommodate the exigencies of the bankruptcy case with the concerns of the appellant, the bankruptcy court required that $1.5 million of the purchase price be put in escrow. The focus of the dispute at bar, therefore, is a narrow one: Is the amount in escrow sufficient to provide adequate protection?

8. Despite the arguably untimely objections posed to the sale by appellant, the bankruptcy judge afforded appellant the opportunity to present evidence regarding, *inter alia,* valuation. The only relevant evidence introduced by appellant was as follows:

> I have – the estimate I can make is in the two – would be in the two digits millions of U.S. dollar. But I cannot judge this in detail. There could be twenty, could be twenty-five whatsoever.

(Transcript, March 13, 2009 at 72) The witness went on to explain, without documentary or other support, that the above figures derived from

> an inventory sitting at [Tally AG] in our central warehouse of about 7.5 million euro, and this inventory, of course, is to be traded under TallyGenicom. And there is – well, since we don't – plus what is in the pipeline . . . as well. I mean, this is leading up to about ten million euro, plus, of course, not to mention all the costs involved to shut down the business or the company; also paying severance for employees, et cetera, et cetera. So this is how I think about a number of this at twenty, twenty-five million.

(*Id.*)

9. Appellee, on the other hand, relied (for its valuation of $1.5 million) on the documents that were created in the ordinary course of business for the various transactions at issue, which documents were reviewed by accounting and legal professionals. The bankruptcy court found this evidence more credible than that

5

provided by appellant.

10. Although the court is cognizant that consummation of the sale may deprive appellant of the opportunity to obtain more than $1.5 million for the intellectual property at issue, should appellant ultimately prevail, the court concludes that appellant was given a full and fair opportunity to prove value, that the evidence it presented as to value (e.g., damages) was speculative at best,[5] and that the bankruptcy court did not err in its analysis of the factual record.

11. **Conclusion.** I conclude, consistent with the bankruptcy court's decision, that appellant Pluta failed to demonstrate irreparable harm in light of the adequate protection provided by the purchaser.

_____
United States District Judge

---

[5] Aside from the conclusory testimony of Mr. Geiger and counsel's argument, it is far from apparent what the consequences of the sale will be for the German subsidiaries, e.g., how the domestic and European entities transacted business in the normal course, how Tally trademarks are valued when the corporate entities operate under the TallyGenicom corporate umbrella, when the German insolvency proceedings were instituted and why.